IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5:08-CV-78-FL

| | |
|---|---|
| STEPHEN INGRAM | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| WAKE COUNTY GOVERNMENT,<br>WAKE COUNTY HUMAN RESOURCES,<br>JACK H. ROGERS, III,<br>LILLIAN OVERTON,<br>and LEWIS D. JACKSON, JR., | )  **MEMORANDUM AND**<br>)  **RECOMMENDATION**<br>)<br>)<br>)<br>) |
| Defendants. | ) |

This cause comes before the court on defendants' motion for summary judgment **[DE-76]** pursuant to Rule 56 of the Federal Rules of Civil Procedure. This matter is before the undersigned for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). The plaintiff, appearing *pro se*, has responded to the motion. Accordingly, the matter is ripe for disposition. For the following reasons, it is **HEREBY RECOMMENDED** that the defendants' motion for summary judgment be **GRANTED** with respect to all remaining claims.

## BACKGROUND

Plaintiff is a black male and former employee of Wake County ("Wake"). Plaintiff's amended complaint alleges that he was terminated from employment in violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. At the time of his discharge, plaintiff held the

position of interstate child support enforcement agent.[1]  Defendants filed an answer and motion to dismiss plaintiff's amended complaint.  The court dismissed plaintiff's Title VII claims against defendants Jack H. Rogers, III ("Rogers"), Lillian Overton ("Overton"), and Lewis D. Jackson, Jr. ("Jackson") in their individual capacity.  The court also dismissed plaintiff's claim for punitive damages against Wake as well as Rogers, Overton, and Jackson in their official capacity.  The court denied the remainder of defendants' motion to dismiss.  Plaintiff's disparate treatment, retaliation, § 1981 and § 1983 claims survived defendants' motion to dismiss.  These remaining claims are the subject of defendants' instant motion for summary judgment.

## DISCUSSION

A grant of summary judgment is warranted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party must demonstrate the lack of a genuine issue of fact for trial, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. Celotex, 477 U.S. at 324.  The court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Conclusory allegations are not sufficient to defeat a motion for summary judgment. Anderson v. Liberty

---

[1] Agents handle child support obligations of out of state parents or non-custodial parents in Wake county with child support obligations in other states.

Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .") (emphasis in original).

**A.    Plaintiff's Title VII Claims**

   **1.    Disparate Treatment**

Plaintiff alleges disparate treatment in violation of Title VII. "To establish a prima facie case of disparate treatment, [plaintiff] must show: (1) he is a member of a protected class; (2) he has satisfactory job performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment." Cottman v. Rubin, 35 Fed. Appx. 53, 55 (4th Cir. 2002) (citing Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). In the instant matter, plaintiff does not establish a prima facie case of disparate treatment. He fails to show that he was performing his job in a satisfactory manner. While plaintiff's evidence reveals he received satisfactory performance evaluations, a fact not contradicted by defendants, the evidence also shows he received "two (2) written warnings within twelve months of each other for essentially the same performance" issues. **[DE-77], p. 9**. Plaintiff's supervisor noted that plaintiff's performance had "greatly declined" after his last supervisor left and that his "most egregious errors" came to light around Christmas 2005. **[DE-77], p. 9**.

Even if plaintiff had made a prima facie case of disparate treatment, defendants would still be entitled to summary judgment. Defendants have put forth a legitimate, non-

3

discriminatory reason for discharging plaintiff. *See* Goodman v. State of Md. Dept. of Social Services, 64 F.3d 657 (4th Cir. 1995) (unpublished opinion) (affirming "defendants . . . were entitled to summary judgment because [plaintiff] failed to overcome the legitimate, nondiscriminatory reasons they gave for their actions toward [plaintiff].") Specifically, defendants submitted the affidavits of Jackson, plaintiff's immediate and direct supervisor, and Overton, Program Director of the Child Support Office. Both affidavits describe the plaintiff's mismanagement of his child support cases. In one instance, plaintiff's errors left a parent "destitute and penniless at Christmas 2005" where she "could not afford anything for her children and because of plaintiff's mistakes . . . her wages continued to be garnished well beyond her legal support obligations." **[DE-77], p. 4**. In another, they detail plaintiff's refusal to provide documentation regarding this matter and other "work-list" items which had been requested in writing by Overton. **[DE-76-2], p. 15, ¶¶ 16, 20-21**. Similarly, on February 24, 2006, Overton emailed Rogers and expressed her belief that plaintiff had begun making changes to files in order to hide his errors. **[DE-80], p. 35**. Based on these non-discriminatory reasons for plaintiff's discharge, the undersigned finds that plaintiff cannot sustain a claim for disparate treatment under Title VII.

Therefore, it is **HEREBY RECOMMENDED** that defendants' motion for summary judgment on plaintiff's Title VII disparate treatment claim as to all defendants be **GRANTED**.

### 2. Retaliation Claim

Plaintiff also alleges retaliation in violation of Title VII. "To establish his prima facie

4

case of retaliation, [plaintiff] must show that he engaged in protected activity, that [defendants] took adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment activity." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). "Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." Laughlin v. Metro. Wash. Airports Authority, 149 F.3d 253, 259 (4th Cir. 1998) (internal citations omitted). Opposition activity includes using "informal grievance procedures[,] . . . staging informal protests[,] and voicing one's opinion in order to bring attention to an employer's discriminatory activities." Id. To define an adverse employment action, the court must determine whether plaintiff has shown "that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Moreover, plaintiff need not be complaining of a practice that is actually unlawful under Title VII, but one that he "reasonably believes is unlawful." Jordan v. Alterative Resources Corp. 458 F.3d 332, 338-339. "Because the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." Id at 339. (citing Clark Co. Sch. Dist. v. Breeden, 532 U.S. 268 (2001)) (per curiam).

5

Plaintiff engaged in protected activity at the time he discussed with Overton what he perceived as "maltreatment by [his] current supervisor" **[DE-76-2], p. 8**. *See* Gibson v. Fluor Daniel Services Corp., 281 Fed. Appx. 177, 180 (2008) ("[E]mployees have proffered sufficient evidence from which a jury could concluded that they engaged in protected activity-namely, complaints about . . . treatment in the workplace"). He received his first written warning about his work performance after his discussions with Overton. There is no evidence suggesting plaintiff's first written warning was planned prior to his complaint. Plaintiff indicated that he "was being harassed almost daily by . . . Jackson", and Jackson was "retaliating against [him] for discussing [Jackson's] actions with . . . Overton." **[DE-76-2], p. 8, ¶ 3**. As such, the undersigned finds that plaintiff experienced an adverse action.

"To survive summary judgment . . . [plaintiff] must have evidence from which a reasonable factfinder could conclude that a causal connection exist[ed] between the protected activity and the adverse action." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). To satisfy this element, "the employer must have taken the adverse employment action *because* . . . plaintiff engaged in a protected activity." Id. (emphasis in original).

The evidence suggests that defendants were aware of plaintiff's complaint against his supervisor on or about March 11, 2005. **[DE-76-2], p. 8, ¶ 3**. Defendants issued plaintiff's first written warning on April 18, 2005. Plaintiff filed an official Wake employment grievance on April 21, 2005. Plaintiff received coaching and training, **[DE-76-2], p. 4, ¶ 8**,

6

and earned positive reviews from his trainer. **[DE-76-2], p. 9, ¶ 3**. Defendants issued plaintiff's second written warning on February 23, 2006. Plaintiff lodged an unofficial employment grievance on March 2, 2006, **[DE-76-2], p. 10**, and was discharged on March 9, 2006. "There is thus evidence that allows some loose inference of causality. While this proof far from conclusively establishes requisite casual connection, it certainly satisfies the less onerous burden of making a prime facie case of causality." Belyakov v. Leavitt, 308 Fed. Appx 720, 729 (4th Cir. 2009) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)) (internal quotation marks omitted). Based on the forgoing, the undersigned concludes that plaintiff has established a prima facie case for his retaliatory discharge claim.

Having established a prima facie case, "the burden shifts to the defendant[s] to articulate a legitimate, non-retaliatory reason for the adverse employment action." Belyakov, 308 Fed. Appx at 729 (citing Reeves v. Sanderson Plumbing Prod. Inc, 530 U.S. 133, 143 (2000)). *See* McDonnell Douglas Corp., v. Green, 411 U.S. 792, 802 (1973). In this case, defendants have done so.

As discussed in the court's analysis of plaintiff's disparate treatment claim, defendants proffered explanation, that plaintiff did not meet the expectations of his position, satisfies their burden to put forth a legitimate, non-retaliatory reason for plaintiff's discipline and discharge.

> [O]nce a non-retaliatory explanation has been articulated, the plaintiff must show that this explanation is a pretext for discrimination. To do this the employee must establish that the explanation is a lie, which permits a jury to

infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts. Yindee v. CCH Inc., 458 F. 3d 599, 602 (7th Cir. 2006) (internal citations omitted).

Plaintiff has failed to submit sufficient evidence to show the legitimate, non-retaliatory reason proffered by defendants is false or "unworthy of credence". Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). The evidence establishes that plaintiff mismanaged cases and disobeyed instructions. Thus, there is insufficient evidence of pretext to withstand summary judgment. The undersigned finds that plaintiff cannot sustain a claim for retaliation under Title VII.

Therefore, it is **HEREBY RECOMMENDED** that defendants' motion for summary judgment on plaintiff's claim for retaliation under Title VII as to all defendants be **GRANTED**.

**B. 42 U.S.C. § 1981 Claim**

Section 1981 bars discrimination on the basis of race. Duane v. GEICO, 784 F.Supp. 1209, 1216 (D. Md. 1992), aff'd, 37 F.3d 1036 (4th Cir 1994). Claims under § 1981 are analyzed in the same manner as claims under Title VII. Harley v. Suburban Hosp. Inc., 122 Fed. Appx 39 (4th Cir 2005); Bryant v. Bell Atlantic Md., 288 F.3d 124, 134 n.7 (4th Cir. 2002). To prevail under § 1981, plaintiff must prove intentional discrimination which led to the deprivation of his rights under § 1981. Spriggs v. Diamond Auto Glass, 165 F.3d

8

1015, 1018 (4th Cir. 1999). Because plaintiff fails to establish his Title VII claims, plaintiff cannot prevail on the § 1981 claim. Soloski v. Adams, 600 F.Supp.2d 1276 (N.D.Ga. 2009). *See also* Persuad v. Morgan State University, 34 F.3d 1066 (4th Cir. 1994) (unpublished opinion). Accordingly, the undersigned finds that plaintiff cannot sustain a claim under § 1981.

Therefore, it is **HEREBY RECOMMENDED** that defendants' motion for summary judgment on plaintiff's § 1981 claim as to all defendants be **GRANTED**.

**C. 42 U.S.C. § 1983 Claim**

"Section 1983, by its own terms, prohibits constitutional violations under color of state law." Jones v. Mullins Police Dept., 2009 WL 4691950 at *2 (4th Cir. 2009) (slip opinion). To prevail under § 1983, plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. V. Sullivan, 526 U.S. 40, 49-50 (1999). Plaintiff asserts the defendants denied "his constitutional right to work in an environment free from discrimination, disparate treatment, and retaliation." **[DE-80], p. 3**.

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. A municipality cannot be held liable *solely* because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Rowell

v City of Hickory, 2009 WL 2632148 at *3 (4th Cir. 2009) (slip opinion) (internal citations omitted) (emphasis in original).

Not every deprivation of a constitutional right will lead to liability. Only in cases where the defendants caused the deprivation "through an official policy or custom" will liability attach. Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). A policy or custom for which a municipality may be held liable can arise from

> written ordinances and regulations, . . . certain affirmative decisions of individual policymaking officials, . . . certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens, . . . [or] practice[s] so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law. Id. at 217 (internal citations and quotations omitted).

Plaintiff appears to contend that defendants are liable on each of these grounds. A local government may be held liable for a decision made by an individual whose actions represent an official policy. Riddick v. School Bd. Of the City of Portsmounth, 238 F.3d 518, 523 (4th Cir. 2000). However, merely "going along with the discretionary decisions made by . . . subordinates . . . is not a delegation to them of the authority to make policy." City of Saint Louis v. Praprotnik, 485 U.S. 112, 130 (1988). It is well settled that "isolated incidents" of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Carter, 164 F.3d at 220. Rather, there must be "numerous particular instances" of unconstitutional conduct in order to establish a custom or practice. Kopf v. Wing, 942 F.2d 265, 269 (4th Cir. 1991). *See also* Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987). Plaintiff alleges that defendants "have a history and pattern of discriminating against its black male employees." **[DE-80], p. 5**.

10

Case 5:08-cv-00078-FL   Document 86   Filed 01/28/10   Page 10 of 11

Plaintiff also alleges that black male employees are held to higher standards and are "required to do twice as much as white employees." **[DE-80], p. 5**. Outside of these conclusory statements, plaintiff produces no evidence of any policy or custom of defendants which condones unlawful employment practices. To the contrary, Wake maintained a policy designed to shield its employees from discriminatory practices **[DE-76-2], p. 59-60, 62-63**. As such, the undersigned finds that plaintiff cannot sustain a claim under § 1983.

It is **HEREBY RECOMMENDED** that defendants' motion for summary judgment on plaintiff's § 1983 claim as to all defendants be **GRANTED**.

## CONCLUSION

For the aforementioned reasons, it is **HEREBY RECOMMENDED** that defendants' motion for summary judgment **[DE- 76]** be **GRANTED** with respect to all remaining claims.

**SO RECOMMENDED** in Chambers at Raleigh, North Carolina this 28th day of January, 2010.

_____
William A. Webb
U.S. Magistrate Judge